IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| CHRISTIAN PATRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: |
| | ) | 1:23-CV-00352-CBB |
| JESSAMINE HEALTHCARE, INC., | ) | |
| CORRECT CARE SOLUTIONS, LLC/ | ) | |
| WELLPATH, LLC, GEENANDER | ) | Christopher B. Brown |
| RAJU, INDIVIDUALLY AND IN HER | ) | United States Magistrate Judge |
| OFFICIAL CAPACITY AS NURSE | ) | |
| JESSAMINE HEALTHCARE, | ) | |
| INC./CORRECT CARE SOLUTIONS, | ) | |
| LLC/WELLPATH, LLC; KIM SMITH, | ) | |
| INDIVIDUALLY AND IN HER | ) | |
| OFFICIAL CAPACITY AS NURSE; | ) | |
| LOUIS IAFRATE, INDIVIDUALLY | ) | |
| AND IN HIS OFFICIAL CAPACITY | ) | |
| AS PHYSICAL THERAPIST; | ) | |
| JESSAMINE HEALTHCARE, INC., | ) | |
| DR. PAUL DEL BIANCO, | ) | |
| INDIVIDUALLY AND IN HIS | ) | |
| OFFICIAL CAPACITY AS DOCTOR | ) | |
| JESSAMINE HEALTHCARE, | ) | |
| INC./CORRECT CARE SOLUTIONS, | ) | |
| LLC/WELLPATH, LLC; | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION</u>**[1]

**Christopher B. Brown, United States Magistrate Judge.**

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

1

## I.    Introduction

This civil rights action was initiated by Plaintiff Christian Patrick against several medical professionals[2] at the Pennsylvania Department of Corrections ("DOC") at State Correctional Institution ("SCI") at Forest.  Patrick generally alleges Defendants violated his federal civil rights for failing to provide adequate healthcare while he was incarcerated.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.  Presently pending before the Court are the following:

(1)    A motion to dismiss for lack of jurisdiction or in the alternative for judgment on the pleadings by Defendants CORRECT CARE SOLUTIONS, LLC/ WELLPATH, LLC, JESSAMINE HEALTHCARE, INC. ECF No. 108;

(2)    A motion to dismiss for failure to state a claim or alternatively for summary judgment by Defendants PAUL DEL BIANCO, GEENANDER RAJU ECF No. 110; and

(3)    A motion to dismiss for failure to state a claim by Defendant KIM SMITH ECF No. 121.

The motions are fully briefed and ripe for consideration. ECF Nos. 109, 111, 122, 129, 135.

For the reasons that follow, the motions are decided as follows:

(1)    Defendants CORRECT CARE SOLUTIONS, LLC/ WELLPATH, LLC, JESSAMINE HEALTHCARE, INC.'s motion ECF No. 108 is **GRANTED** as unopposed;

---

[2]    Defendants include Geenander Raju, a nurse at SCI Forest ("Nurse Raju"), Paul Del Bianco, M.D., a doctor at SCI Forest ("Dr. Del Bianco"), Jessamine Healthcare, Inc., Jessamine Healthcare Inc., d/b/a Correct Care Solutions, LLC/Wellpath, LLC, Correct Care Solutions, LLC/Wellpath, LLC, Kim Smith, a nurse at SCI Forest ("Nurse Smith"), and Louis Iafrate, a physical therapist at SCI Forest ("PT Iafrate").

(2)    Defendants PAUL DEL BIANCO, GEENANDER RAJU's motion ECF No. 110 is **DENIED**; and

(3)    Defendant KIM SMITH's motion ECF No. 121 is **DENIED**.

## II.    Background

Patrick is an inmate currently in the custody of DOC and incarcerated at SCI Forest.  He brings this action for alleged civil rights violations in connection with inadequate medical care he received while incarcerated.

On or about January 9, 2022, Patrick was in the prison yard when he slipped and fell.  ECF No. 65 at ¶ 9.  It was then he felt a pop and intense pain in his left knee.  *Id.*  After the fall he was sent to the prison's medical unit where he was seen by Dr. Del Bianco who told Patrick that his injury "was probably nothing too serious."  *Id*. at ¶¶ 10-12.  Dr. Del Bianco gave Patrick pain medication and crutches while awaiting an x-ray. *Id*. at ¶ 13.  According to Patrick, his left knee and leg swelled to approximately the size of a basketball and remained that way for around five months after his injury. *Id*. at ¶ 14.  Patrick claims he experienced severe leg and knee pain as well as had trouble with walking and standing. *Id*. at ¶ 18.

After the fall, Patrick was reassigned to a new cell on the prison's top tier and was not assigned "bottom bunk status" until more than three months later, on March 30, 2022.  *Id*. at ¶¶ 15-17. Patrick alleges he received five misconduct violations for not standing during count when he was physically unable to comply. *Id*. at ¶ 19.

While on top tier status, Patrick alleges Nurse Raju took his crutches away on or about February 9, 2022, told him there was nothing wrong with him, and that he needed to "walk it off." *Id.* at ¶¶ 20-21. Patrick also claims on or about February 27, 2022, Dr. Del Bianco administered a cortisone shot to the wrong leg and after Patrick reported it, he received a cortisone shot in the correct leg. *Id.* at ¶¶ 22-24.

Patrick did not receive an MRI until May 23, 2022, approximately four months after his injury. *Id.* at ¶ 34. He was told by corrections staff that the MRI should have been scheduled sooner and "it was our fault that it wasn't entered in the computer sooner." *Id.* Patrick did not receive his results until July 6, 2022 despite his attempts to receive his results sooner. *Id.* at ¶¶ 35-42. The results showed Patrick had a meniscus tear in his left knee and was advised he would be seen by a doctor to determine if he needed surgery. *Id.* at ¶ 42. By July 23, 2022, Patrick had still not received a surgical consultation and filed another grievance to address this issue, which was ultimately denied. *Id.* at ¶¶ 43-51. In the interim, Patrick attempted to schedule a physical therapy appointment with PT Iafrate but was turned away and as Iafrate stated there was nothing he could do to assist Patrick until he had surgery. *Id.* at ¶¶ 52-53.

Fourteen months after Patrick was injured, he received surgery on March 7, 2023 to fix the torn meniscus and sprained left knee. *Id.* at ¶ 54. While undergoing surgery, it was found that Patrick had also suffered a torn ACL in his left knee and was told he would need additional surgery to fix that. *Id.* at ¶¶ 57-58. Patrick was given specific post-surgery care instructions including keeping his leg propped with

ice and a hot pack, taking blood thinners and undergoing physical therapy. *Id*. at ¶ 58.  Patrick claims Dr. Del Bianco, Nurse Raju and Nurse Smith ignored the post-surgery care instructions and Patrick developed a rash around the incision site. *Id*. at ¶¶ 59-60.

Only the day after the surgery was Patrick restricted to a ground-level cell. *Id*. at ¶ 17.

Patrick then filed another grievance regarding the lack of medical care with respect to his torn ACL, which was ultimately denied. *Id*. at ¶¶ 66-70.  On or about September 1, 2023, Patrick received surgery to repair his torn ACL and was told he would need extensive ACL surgery. *Id*. at ¶¶ 71-72.  After surgery, on September 19, 2023, Patrick's pillow that he used to elevate his leg was taken away from him. *Id*. at ¶ 73.  The next day, Patrick filed an inmate's request to staff member and complained he had not received physical therapy, did not receive more pain medication and that the pillow he used to elevate his leg had been taken. *Id*. at ¶ 74.  Three days later, Nurse Smith responded to Patrick's request and stated the surgeon did not send physical therapy instructions.  *Id*. at ¶ 75.  Nurse Smith said she would follow up and directed Patrick to use a rolled-up blanket or laundry to elevate his leg. *Id*.  Patrick's surgeon directed Medical to order Patrick an ACL brace which Patrick never received. *Id*. at ¶¶ 76-77.

After surgery, Patrick was only given two physical therapy sessions with PT Iafrate – one in December 2023 and one in 2024. *Id*. at ¶ 78.  PT Iafrate told Patrick he was supposed to come to physical therapy right after surgery. *Id*. at ¶ 79.

During the physical therapy sessions, PT Iafrate handed Patrick a piece of paper with exercises on it and did not demonstrate these exercises or assist Patrick in learning them. *Id.* at ¶ 80.

Patrick claims he has substantial pain, his left knee is still numb and swollen, and the functionality of his left knee remains affected. *Id.* at ¶¶ 81-82. He asserts two causes of action: (1) a "failure to provide medical care/failure to keep safe/cruel and unusual punishment/deliberate indifference violations of [the] 4th, 8th, 14th amendments" against Dr. Del Bianco, Nurse Raju, Nurse Smith and PT Iafrate ("Count I"); and (2) a "*Monell*" claim against Defendants Wellpath, Dr. Del Bianco and Nurse Smith ("Count II"). *Id.* at ¶¶ 86-105.

### III.   Standards of Review

#### a.  Fed. R. Civ. P. 12(b)(6)

The applicable inquiry under Fed. R. Civ. P. 12(b)(6) is well settled. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief;" Fed. R. Civ. P. 8(a)(2), and can be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A defendant bears the burden of showing a plaintiff's complaint fails to state a claim. *See Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must be dismissed if it merely alleges

entitlement to relief without supporting facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), nor a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of their claims – not if they will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds).

In deciding a motion to dismiss, a court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record and any document "integral to or explicitly relied upon in [framing] the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up). If a court considers other matters outside of this list, the motion must be converted to a motion for summary judgment after giving the parties a reasonable opportunity to present all material discovery relevant to a summary judgment motion before the Court's decision. Fed. R. Civ. P. 12(d).

### b. Fed. R. Civ. P. 56

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Id.* at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, it has the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of [his] case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains its initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (cleaned up) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

At the summary judgment stage, the Court's role is not to "weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts in the light most favorable to the non-moving party. *See*

8

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587. But "conjecture and speculation" cannot create a genuine issue of material fact. *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 328 (3d Cir. 2016). And the Court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV.    Discussion

### a. Concessions by Plaintiff

As an initial matter, Plaintiff concedes many points raised by Defendants and does not oppose their motions to dismiss. In particular, Patrick withdraws his *Monell* claim in Count II and therefore that claim is dismissed.[3] ECF No. 129 at 14. Because Count II is the only claim asserted against Defendants JESSAMINE HEALTHCARE, INC., CORRECT CARE SOLUTIONS, LLC/ WELLPATH, LLC, JESSAMINE HEALTHCARE, INC. doing business as CORRECT CARE SOLUTIONS, LLC/WELLPATH, LLC, these Defendants are dismissed from this action.

Patrick also withdraws his claims raised in Count I against Defendant Smith in her official capacity, and claims under the Fourth and Fourteenth Amendments and such claims are dismissed.[4] *Id.* at 14-15.

---

[3]    In the Third Amended Complaint, the claim at Count II is "Monell" against "Defendants Wellpath, Dr. Del Bianco, and Smith." ECF No. 65 at 14.

[4]    As set forth previously, in the Third Amended Complaint the claim at Count I is "Violation-Failure to Provide Medical Care/Failure to Keep Safe/Cruel and Unusual Punishment/Deliberate Indifference Violations of 4th, 8th, and 14th Amendments" against "Defendants Del Bianco, Raju,

Accordingly, Patrick's claims under the Fourth and Fourteenth Amendments for deliberate indifference to his serious medical needs are likewise dismissed, as his claim is properly considered under the Eighth Amendment.

In light of these concessions, the only claim that remains is an Eighth Amendment deliberate indifference to serious medical needs against Defendants Dr. Del Bianco, Nurse Raju, Nurse Smith and PT Iafrate.  Of the remaining defendants there are two Motions to Dismiss for this Court to resolve – one filed by Defendant Kim Smith and one filed by Defendants Dr. Del Bianco and Nurse Raju.[5]  Each of the two remaining motions to dismiss will be addressed in turn.

### b.  Defendant Kim Smith's Motion to Dismiss ECF No. 121

Nurse Smith argues Patrick has failed to state a *prima facie* claim of Eighth Amendment deliberate indifference against her and therefore the claim against her should be dismissed. ECF No. 122 at 9-13.  In doing so, Nurse Smith argues that Patrick's claims she ignored the doctor's post-surgery instructions when she told Patrick to use a rolled-up blanket or laundry to prop his leg up after his pillow was taken away by others and told him they received no physical therapy instructions are threadbare allegations that do not rise to the level of deliberate indifference. *Id.* at 9.  Patrick responds that his allegations Nurse Smith ignored the surgeon's post-surgery instructions and denied and responded to Patrick's grievance related to him

---

Smith, and Iafrate." ECF No. 65 at 12.

[5]      Although Defendant Iafrate originally filed a motion to dismiss as well, it was later withdrawn and he subsequently filed an Answer instead. ECF Nos. 124, 137, 139.

receiving ACL surgery are sufficient to state a deliberate indifference claim. ECF No. 129 at 11.

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).

To state an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, if "unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (internal citation omitted).

Prison authorities are deliberately indifferent if they "intentionally deny[ ] or delay[ ] access to medical care," *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)), or if they "continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm." *Williams v. Kort*, 223 F. App'x 95, 100 (3d Cir. 2007) (citing *Rouse*, 182 F.3d at 197; *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)).  Thus, an official is deliberately indifferent if they know of "and disregards an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582.  Allegations of medical malpractice or disagreements about medical treatment are not actionable under the Eighth Amendment. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Additionally, a defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "'Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

Patrick's allegations against Nurse Smith are enough to state a deliberate indifference to serious medical needs claim under the Eighth Amendment.  He claims Nurse Smith prevented him from receiving prescribed medical treatment by taking no action after Patrick complained he was not receiving physical therapy and other post-surgery care instructions after his first surgery, delayed his second surgery to repair his ACL by allegedly wrongly asserting no surgery was warranted, and likewise delayed post-surgery care instructions, like physical therapy, after his

12

ACL surgery.  Patrick alleges this caused him serious pain and a loss of functionality of his leg.  Taken as true, these allegations sufficiently set forth a deliberate indifference to Patrick's serious medical needs by intentionally denying and delaying prescribed medical treatment "in the face of resultant pain and risk of permanent injury." *White*, 897 F.2d at 109.  Accordingly, Nurse Smith's motion is denied.

### c. Defendants' Dr. Del Bianco and Nurse Raju's Motion to Dismiss ECF No. 110

The Court will next address the remaining arguments in Dr. Del Bianco and Nurse Raju's motion to dismiss/motion for summary judgment.  They argue Patrick's claims must be dismissed because (1) he failed to exhaust his administrative remedies against them; (2) he failed to articulate their personal involvement; (3) he fails to state a claim for deliberate indifference; and (4) the facts alleged do not support punitive damages. ECF No. 111 at 6-24.  Each argument is addressed in turn.

### i. Exhaustion Under the Prison Litigation Reform Act

First, Dr. Del Bianco and Nurse Raju argue Patrick has not exhausted his administrative remedies because he failed to identify them in grievances. ECF No. 111 at 8.  They argue this failure requires dismissal of Patrick's claims. *Id.* Likewise, they argue Patrick did not request monetary relief in his grievances and he should be precluded from recovering any monetary damages in this litigation. *Id.* at 12-14.  Patrick responds he referenced both Nurse Raju and Dr. Del Bianco in his grievances or appeals thereto. ECF No. 129 at 7-8.  Patrick also responds that

he sought monetary relief in a subsequent grievance that was consolidated with the original grievance and separately sought monetary damages in another grievance he filed. ECF No. 129 at 8. Each argument is addressed separately.

As a preliminary matter, Dr. Del Bianco and Nurse Raju seek dismissal of Patrick's claims and elsewhere cite to the summary judgment standard. ECF No. 111 at 5-6, 14. But, they do not specifically articulate whether they are seeking dismissal under Rule 12(b)(6) or instead whether Rule 56's summary judgment applies to their exhaustion argument. The parties submitted relevant evidence and supporting materials related to Patrick's exhaustion of administrative remedies. *See* ECF Nos. 111-1, 111-2, 112, 131, 132. Accordingly, the exhaustion argument will be considered under Rule 56's summary judgment standard.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As recently explained by the Court of Appeals for the Third Circuit:

> The exhaustion mandate is a "centerpiece" of the statute, *see Woodford v. Ngo*, 548 U.S. 81, 84 (2006), that serves three important statutory goals: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits," Spruill [v. Gillis], 372 F.3d [218,] 230 [3d Cir. 2004]. The PLRA requires "proper exhaustion," *Woodford*, 548 U.S. at 92, which means "complet[ing] the administrative review process in accordance with the applicable procedural rules." *Downey v.*

14

*Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Woodford*, 548 U.S. at 88). The only limit on § 1997e(a)'s mandate is that "administrative remedies must be available to the prisoner" as both a formal and practical manner. *Id.* (citing *Ross v. Blake*, 578 U.S. 632, 641–42 (2016)).

*Talley v. Clark*, 111 F.4th 255, 262 (3d Cir. 2024). An administrative remedy is unavailable, and administrative exhaustion is thus excused, when it "operates as a simple dead end[,] ... is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' " *Downey*, 968 F.3d at 305 (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)) (internal quotation marks omitted). "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Id.* In these situations, "[w]hat is good for the goose is good for the gander." *Shifflett*, 934 F.3d at 367. "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Id.* at 365.

The prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Spruill*, 372 F.3d at 230–31 (explaining that "prison grievance procedures supply the yardstick for measuring procedural default."). Therefore, the procedural requirements for exhaustion in each case "are drawn from the policies of the prison in question rather than from

15

any free-standing federal law." *Shifflett*, 934 F.3d at 364.  Because proper

exhaustion requires full compliance with the prison's deadlines and procedures, an

untimely or procedurally defective grievance or appeal does not satisfy the PLRA

and precludes a prisoner from subsequently filing his claims in federal court, i.e.,

the prisoner's claims are procedurally defaulted.[6] *Spruill*, 372 F.3d at 231; *Booth v.*

*Churner*, 206 F.3d 289 (3d Cir. 2000), *aff'd,* 532 U.S. 731 (2001).

It is not the plaintiff's burden to affirmatively demonstrate exhaustion.

*Jones*, 549 U.S. at 217 (holding that "failure to exhaust is an affirmative defense

under the PLRA, and that inmates are not required to specially plead or

demonstrate exhaustion in their complaints.").  Instead, the failure to exhaust must

---

[6]      The DC-ADM 804 is the Pennsylvania Department of Corrections ("DOC") "Inmate Grievance System" applicable here. *See* DC-ADM 804 Policy Statement, available online at: https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf  (effective May 1, 2015) (last visited March 13, 2026). According to the policy, "every individual committed to [DOC] custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement. For every such issue, there shall be a forum for review and two avenues of appeal." *Id*. at p.1. The Inmate Grievance System sets forth three separate stages: First, the prisoner must timely submit a written grievance for review by the facility grievance coordinator using the approved form within fifteen working days of the incident, at which time the facility coordinator will assign a tracking number to the grievance and respond within fifteen business days. DC-ADM 804 §§ 1.A, C. The Inmate Grievance System provides that the grievance must include "a statement of facts relevant to the claim" and shall include, inter alia, "the date, approximate time, and location of the event(s) that gave rise to the grievance," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violation of Department directives, regulations, court orders, or other law." DC-ADM 804 § 1.A.11.  Next, the inmate must timely submit a written appeal within fifteen working days from the initial review, and again the inmate will receive a written response thereto within fifteen working days. *Id*. at § 2.A.  Lastly, the inmate must submit a timely appeal for final review to SOIGA within fifteen working days, and the inmate will receive a final determination in writing within thirty days thereafter. *Id*. at § 2.B. An inmate appealing a grievance to final review must provide SOIGA with the following documentation: (1) a legible copy of the Initial Grievance; (2) a copy of the initial review response/rejection and/or remanded initial review response/rejection; (3) a legible copy of the Inmate Appeal to the Facility Manager; (4) a copy of the Facility Manager/designee's decision and/or remanded Facility Manager/designee's decision; and (5) a written appeal to the SOIGA. *Id*. at §§ 2.B.1.j.1-5. The Inmate Grievance System further provides that "failure to provide any of the documentation noted above may result in the appeal being dismissed[.]" *Id*. at § 2.B.1.j.6.

be asserted and proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

### 1. Dr. Del Bianco and Nurse Raju are adequately identified in grievances

Dr. Del Bianco and Nurse Raju maintain Patrick submitted two relevant grievances related to his knee injury: Grievance No. 987928 dated July 4, 2022, Grievance No. 1024726 dated March 17, 2023. ECF No. 111 at 8. It appears undisputed that Patrick fully exhausted these grievances through a final appeal. Dr. Del Bianco and Nurse Raju instead maintain the substance of the grievances do not identify or mention them by name and thus Patrick has failed to exhaust any claims against them. *Id.* Dr. Del Bianco and Nurse Raju argue Patrick is required to name them in the grievance because the PA DOC Grievance Policy requires inmates to "identify individuals directly involved in the event(s)." DC-ADM 804, § 1.A.11.b.

Grievance Number 987928 filed on July 4, 2022 states:

On 1-9-22 I injured my left knee. I went to medical that same day. I was given a hand full on Ibuprofen. I was then sent back to my block. I filled out a sick call explaining I am in pain. I was called down to medical. Nothing was done. I waited and filled out, another sick call. I was call down and given a host in my left knee. This did nothing for the pain or the swelling in my left. I fill out another sick call and was given another shot. I then fill out a sick call and was told I'm fine don't worry. I still had pain in my left knee. I then filled out a sick call slip and was given Diclofenac 50mg. This was not met for pain but to take the welling out. I filled out another sick call and given a higher dose of Diclofenac 75mg. I was told I was suppose to have an MRI soon. No MRI happen and I wrote medical on a request of staff on 5-17-22 about being charged for every sick call for the same issue. I was wrote back and told I was being put on the MRI list, and after looking at my notes I was suppose to be put on the list sooner, that is was our fault. I then

17

went to get my MRI on 5-23-22. I went back to my back, and was never told the results of my MRI. I wrote multiple sick calls and was told the results wasn't looked at. It is now 7-4-22 and still no results. I did everything I could. I would like to be seen. These are all my sick call dates that I have on this issue 1-9-22, 2-9-22, 2-16-22, 2-27-22, 3-30-22, 5-4-22, 6-3-22, 6-16-22 I wrote my last request of staff and was told to fill out a sick call slip. I need to know whats going on with my knee. I haven't stretch my left knee. Since I first injured it 1-9-22. I would like this issue looked at and fixed please.

ECF No. 111 at 8-9.  In the portion of the grievance form where it asks the prisoner to "[l]ist actions taken and staff you have contacted before submitting this grievance[,]" Patrick stated "request of staff to medical, sick call, counselor Ms. Cochran, medical staff, Ms. Dorrion, Ms. Rajau." ECF No. 65-1 at 6.

Grievance 987928 was ultimately denied, and Patrick appealed the denial. Patrick's appeal was denied, and the Facility Manager's Appeal Response stated, in part, "On 2-16-22 you saw Dr. DelBianco who gave a steroid injection." ECF No. 65-1 at 14.

Grievance Number 1024726 filed on March 17, 2023 states in full:

On the date of 3-7-23 I received surgery on my left knee. I first injured on 1-9-22. Originally I was told I had a sprain knee and a bucket tear in my meniscus. After a scope of my knee it was discovered that I had a fully tore ACL. Now I need a second surgery on my left knee to repair my ACL. This situation was not handle professionally by SCI Forest medical staff. I was not given any treatment until filing a grievance about this problem. Even then I was not taken care of in the correct manner. I was told I was being put in the computer for a MRI and physical therapy and never was. I was being charged for putting in sick calls for this same manner. I was given medication that did not help and if the MRI was done they would have known. I had to write medical a request of staff to replace that money that was took of my account for this same manner. That's when I discovered a fault made on behalf of SCI Forest Medical. Which was I was not entered in the

18

computer for a MRI or Physical therapy and I was being put on my Lynn Landries, HSA. I was never put on bottom tier, bottom bed. I lived on the top tier in cell 2058 until my surgery. Do to SCI Forest medical staff long delayed time of medical treatment to my knee. It has caused me a long-term disability. This mistreatment of my knee injury violated my right to adequate and timely medical treatment, and is a deliberate indifference to my serious medical need. This is a clear violation of the 8th Amendment. The relief I seek is I receive corrective surgery on my ACL. That I am awarded attorney fees, and awarded $75,000 for pain and suffering, and emotional distress due to long delay in medical treatment, which caused me a disability and any future medical fees, and any other relief that a court may deem just and appropriate.

ECF No. 111 at 9-10. In the portion of the grievance form where it asks the prisoner to "[l]ist actions taken and staff you have contacted before submitting this grievance[,]" Patrick stated: "Lynn Landries, HAS, Dr. Delbianco, Mrs. Dorrion, Mrs. Strick." ECF No. 65-1 at 21.

Grievance Number 1024726 was denied, and the Initial Review Response stated in part:

On 2-9-22 [Patrick] came to sick call and saw NP Raju and complained of continued left [knee] pain. He told the provider he felt his knee was unstable and was still using crutches. A meniscal tear was suspected at this time. The NP looked at the x-ray results again and wrapped his knee, removed the crutches and he was prescribed Motrin for pain and inflammation. He was to be re-evaluated in 2 weeks and a brace issued and determination if a MRI was indicated. On 2-16-22 he was seen by Dr. DelBianco and still reported pain the left knee. The Dr. gave a joint injection of Kenolog into the knee to decrease any swelling and pain and a repeat x-ray was ordered. . . . On 4-20-22 he saw NP Raju for the same complaint and a consultation was placed for physical therapy.

ECF No. 65-1 at 25-26.

19

Patrick adequately identified Nurse Raju in Grievance Number 987928 by naming her as a staff member he contacted before filing the grievance ("Ms. Rajau"). Similarly, Patrick adequately identified Dr. Del Bianco Grievance Number 1024726 by naming him as a staff member he contacted before filing the grievance. Even assuming this was not enough to put Dr. Del Bianco and Nurse Raju on notice that Patrick accused them of any wrongdoing, the DOC's acknowledgment that Dr. Del Bianco and Nurse Raju were "involved in the events that [Patrick] complained of excused any procedural defects in [Patrick's] initial grievances." *Spruill*, 372 F.3d at 234. In both grievances, Patrick complains of the alleged inadequate medical care he received to his left knee after the initial injury, and after his two subsequent surgeries. Prison officials "clearly knew" Dr. Del Bianco and Nurse Raju were implicated in this alleged inadequate medical treatment by including references to them and their treatment of Patrick in responding to Patrick's grievances and appeals. *Spruill*, 372 F.3d at 235 (holding exhaustion defense was waived when prison officials, in responding to the grievance, identified the defendant by name notwithstanding the prisoner's failure to include the defendant by name in the initial grievance). *See also Rinaldi v. United States*, 904 F.3d 257, 271 (3d Cir. 2018) (reaffirming *Spruill* and finding "where a prison disregards its own procedures and rejects an inmate's otherwise procedurally defaulted complaint on the merits, the claim is 'properly exhausted' under the PLRA.").

## 2. Patrick adequately asserts his claim for monetary damages in the grievances

20

Similarly, Patrick adequately sought monetary damages by requesting in Grievance Number 1024726 "$75,000 for pain and suffering, and emotional distress due to long delay in medical treatment, which caused me a disability and any future medical fees, and any other relief that a court may deem just and proper." ECF No. 111 at 9-10.  Thus, Patrick can properly seek monetary damages against Dr. Del Bianco and Nurse Raju with respect to the claims in Grievance Number 1024726.

Whether Patrick adequately sought monetary relief in Grievance Number 987928 is not so straight forward.  It appears undisputed that Patrick did not specifically request monetary relief in Grievance Number 987928.  After he submitted this grievance but before the prison officials responded thereto, on July 23, 2023, Patrick submitted another grievance complaining of the same conduct complained of in his initial grievance.  In the subsequent grievance, Grievance Number 991375 dated July 23, 2023, Patrick sought relief "funded by my lawyer's request." ECF No. 65-1 at 18.  The Facility Grievance Coordinator rejected Grievance Number 991375 because the issues presented in this grievance "has been reviewed or is currently being reviewed and addressed. Prior 987928." ECF No. 65-1 at 19.  It is undisputed that Patrick did not appeal this rejection.

Patrick argues Grievance Number 991375 seeking monetary relief should be deemed consolidated with his initial Grievance Number 987928 because it was rejected as duplicative. ECF No. 129 at 6-7.  Patrick cites several cases for the proposition that "[c]onsolidation of grievances involving the same issues is a normal function within the Consolidated Inmate Grievance Review System." ECF No. 129

at 7 (collecting cases).  Dr. Del Bianco and Nurse Raju did not reply to this assertion.  It is unclear whether rejecting a subsequent duplicative grievance that references the initial grievance amounts to a consolidation of all claims, including the subsequent request for monetary relief.  Thus, Dr. Del Bianco and Nurse Raju have not met their burden of demonstrating that Patrick did not adequately seek monetary relief for Grievance Number 987928, and their motion is denied.

### ii.  Personal Involvement

Next, Dr. Del Bianco and Nurse Raju argue Patrick's deliberate indifference to serious medical need claim must be dismissed because Patrick failed to allege sufficient facts demonstrating their personal involvement in the deprivation of his rights. ECF No. 111 at 14-16.  Patrick responds his third amended complaint has adequately alleged personal involvement of Dr. Del Bianco and Nurse Raju. ECF No. 129 at 9-11.

Patrick is correct that he has alleged sufficiently involvement by Dr. Del Bianco and Nurse Raju at this stage of the pleadings for his deliberate indifference to medical needs claim.  Patrick alleges Dr. Del Bianco inadequately treated Patrick after his initial injury by, *inter alia*, delaying his diagnosis and eventual surgeries, ECF No. 65 at ¶¶ 11, 12, 22-27, 30-39, ignoring the post-surgery instructions Patrick received from his surgeon, including belatedly referring Patrick to physical therapy. *Id.* at ¶¶ 58-59, 72, 78.  Similarly, Nurse Raju is alleged to have inadequately treated Patrick by taking his crutches away from him, and ignoring post-surgery instructions Patrick received from his surgeon, including propping

22

Patrick's leg with ice and hot packs, providing blood thinners and providing physical therapy. *Id.* at ¶¶ 20-21, 58-59.  The acts or omissions alleged therefore demonstrates Dr. Del Bianco and Nurse Raju were personally involved in the alleged deliberate indifference to his medical needs. *See Natale*, 318 F.3d at 582.

Accordingly, Patrick has stated sufficient personal involvement at this stage and Dr. Del Bianco and Nurse Raju's motion is denied in this respect.

### iii.  Deliberate Indifference to Serious Medical Needs

Next, Dr. Del Bianco and Nurse Raju argue Patrick has failed to state a claim of deliberate indifference to serious medical needs against them.  They argue he simply disagrees with the level of medical care provided to him and has not adequately pleaded facts demonstrating their conduct was deliberately indifferent. ECF No. 111 at 20.

All prisoners have a right to adequate medical care. In *Estelle*, 429 U.S. at 103–04, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'...proscribed by the Eighth Amendment." *Id.* at 104 (internal citation omitted). A claim based on the deprivation of necessary medical care must include factual allegations detailing: (1) a serious medical need and (2) acts or omissions by officials that indicate deliberate indifference to that need. *Rouse*, 182 F.3d at 197.

Not every injury or illness enjoys constitutional protection and only medical needs which are serious are actionable. *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978).  "A serious medical need is 'one that has been diagnosed by a physician as

23

requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.' A medical need is also serious where the denial of treatment would result in the 'unnecessary and wanton infliction of pain' or a 'life-long handicap or permanent loss.' " *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (cleaned up). This element "contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." *Moreno-Vigo v. Berkihiser*, No. 1:14-CV-02229, 2016 WL 374451, at *9 (M.D. Pa. Feb. 1, 2016) (citations omitted). Deliberate indifference is manifested in a variety of circumstances including an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White*, 897 F.2d at 109.

Based on Patrick's allegations, he has pleaded sufficient facts to support his deliberate indifference claim. He alleges Dr. Del Bianco and Nurse Raju denied him prescribed care because Patrick was not provided medical care consistent with his surgeon's post-surgery instructions after both surgeries, including propping his leg with ice and hot packs, and administering blood thinners and physical therapy. ECF No. 59 at ¶¶ 20-21, 58-59, 72, 78. Further, he alleges they repeatedly denied his requests for treatment after his initial injury, this denial caused a delay in having his first surgery, his repeated requests for treatment following his first and

24

second surgeries were likewise denied, and this all caused him substantial pain and likely permanent injury to his leg and knee. *Id.* at ¶¶ 54-57, 71, 81-82.

Dr. Del Bianco and Nurse Raju highlight the fact that Patrick received treatment for his knee injury and argue this alone requires dismissal of his Eighth Amendment claim. ECF No. 111 at 20. The fact that Patrick was provided with some medical treatment is not by itself enough to dismiss his Eighth Amendment claim at this stage. *See e.g., White,* 897 F.2d at 109; *Durmer,* 991 F.2d at 69. While discovery may reveal Patrick received a level of medical treatment that is constitutionally sound, accepting Patrick's allegations as true, he has stated a claim for deliberate indifference to his serious medical needs at this stage of the litigation. Defendants may renew their argument at the appropriate time based on a completed record. Accordingly, Dr. Del Bianco and Nurse Raju's motion is denied in this respect.

### iv.   Punitive Damages

Finally, Dr. Del Bianco and Nurse Raju argue Patrick's request for punitive damages should be dismissed because there are no allegations that support a finding of malicious, wanton, reckless, willful or oppressive conduct. ECF No. 111 at 22-24.

To qualify for punitive damages under section 1983, "the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." *Savarese v. Agriss,* 883 F.2d 1194,

1204 (3d Cir. 1989).  At this stage of the litigation, it would be premature to strike Patrick's claim for punitive damages because discovery may or may not reveal Dr. Del Bianco and Nurse Raju acted recklessly when they delayed and denied his medical care. Defendants may renew their argument at the appropriate time based on a completed record.  Accordingly, Dr. Del Bianco and Nurse Raju's motion is denied in this respect.

## V.    Conclusion

Accordingly, based on the foregoing, Defendants CORRECT CARE SOLUTIONS, LLC/ WELLPATH, LLC, JESSAMINE HEALTHCARE, INC.'s motion ECF No. 108 is GRANTED as unopposed; Defendants PAUL DEL BIANCO, GEENANDER RAJU's motion ECF No. 110 is DENIED; and Defendant KIM SMITH's motion ECF No. 121 is DENIED.

An appropriate Order follows.

DATED this 13th day of March, 2026.

BY THE COURT:

s/Christopher B. Brown
United States Magistrate Judge

26